# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 35

OCTOBER TERM, A.D. 2014

*March 6, 2015*

CYNTHIA JILL GUY-THOMAS,

**Appellant**
**(Defendant),**

v.

S-14-0145

TERRY NEIL THOMAS,

**Appellee**
**(Plaintiff).**

---

*Appeal from the District Court of Laramie County*
*The Honorable Peter G. Arnold, Judge*

*Representing Appellant:*
    Donna D. Domonkos of Domonkos Law Office, LLC, Cheyenne, Wyoming

*Representing Appellee:*
    Zenith S. Ward of Buchhammer & Kehl, P.C., Cheyenne, Wyoming

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Cynthia Guy-Thomas (Wife) appeals from a divorce decree, claiming that the district court's alleged bias deprived her of a fair trial. She also complains that the division of marital property was so inequitable as to shock the conscience. We affirm.

## ISSUES[1]

[¶2]    1. Did the district court demonstrate bias in the way it handled the divorce trial?

2. Did the district court abuse its discretion in dividing the marital property?[2]

## FACTS

[¶3]    Wife and Appellee Terry Thomas (Husband) married in 2004. They did not have any children together, although both had children from previous relationships.[3] They lived together in Casper until 2008, when Husband moved to Cheyenne to take a new job and soon thereafter purchased a house there. Wife remained in Casper with her children, and she purchased a new house there in 2010. Husband filed for divorce in 2012.

[¶4]    The district court conducted a trial to divide the parties' marital property, which was the only point of contention between them. The record indicates that the trial lasted one day, with the district court taking a short forty-five minute recess for a personal commitment, but it also indicates that he then allowed the trial to continue until 6:00 p.m. so that the parties could finish presenting their evidence.

---

[1] Wife raises a third issue regarding an order finding her in civil contempt, which the district court issued after the divorce decree had been entered. Wife did not amend or file a new notice of appeal after the subsequent separate contempt order was entered, and consequently, that order was not identified as being appealed in the notice of appeal. "W.R.A.P. 2.07 sets forth the requirement for a notice of appeal, including identifying the judgment or appealable order that is being appealed and attaching, as an appendix, the order or judgment that is being appealed." *Evans v. Moyer*, 2012 WY 111, ¶ 18, 282 P.3d 1203, 1209 (Wyo. 2012) (internal quotation marks omitted). Our review is therefore confined to the two issues arising from the divorce decree, which is the only appealable order or judgment identified in the notice of appeal. *Id.*; *see also Painovich v. Painovich*, 2009 WY 116, ¶ 11, 216 P.3d 501, 504 (Wyo. 2009); *Nish v. Schaefer*, 2006 WY 85, ¶ 23, 138 P.3d 1134, 1143 (Wyo. 2006); *contra Big-D Signature Corp. v. Sterrett Properties, LLC*, 2012 WY 138, ¶ 18, 288 P.3d 72, 77 (Wyo. 2012).
[2] In her reply brief, Wife also urges us to impose sanctions on Husband because his brief indicates that Wife is being detained pending trial on a charge of attempted murder for trying to hire an assassin to kill Husband. Wife is correct that there is nothing in the record concerning this charge. We will simply ignore the information and rule on the facts in the record, and we will not impose sanctions. However, we adjure counsel to confine their presentations to matters contained in the record.
[3] At the time of the divorce proceedings, it appears that all the children had reached the age of majority.

[¶5]     The court issued a clear and cogent oral ruling from the bench immediately after the evidence was closed.  It subsequently issued a Decree of Divorce dividing the real property and other significant assets of the parties consistent with that ruling:

- The Casper house was to be sold and the proceeds split evenly.  Wife was permitted to reside in the home for several months while the property was on the market, although she had testified that she did not want to live there or to have anything further to do with that property.

- Husband was awarded the house in Cheyenne, which the court valued at $744,000.00, with equity of $227,685.59 after the mortgage and a HELOC were deducted. Husband was required to pay Wife $10,000.00 for her interest in that property.

- Two rental houses in Casper were awarded to Husband, who was liable for any debt associated with those properties.  He owned these properties before the marriage.

- Various bank accounts, some containing undisclosed amounts of money, were awarded to each party.  Husband was required to pay Wife $11,234.00 for her interest in one of the accounts he received.

- Husband was awarded his 2012 employment bonus of $19,649.48.

- Wife was awarded her own retirement and pension accounts, which amounted to $63,647.00.  She was also awarded forty percent of Husband's retirement assets, which amounted to $17,728.00.  Thus, of the retirement assets, Wife received $81,375.00 and Husband received $26,592.00.

- Husband was required to pay $20,000.00 towards Wife's student loans (totaling $72,000.00) incurred in part for her master's degree from Florida State University. Wife, however, was solely responsible for her own credit card debt.

- Husband was awarded the life insurance policies in his name.

- Wife was awarded her 2005 Buick Rendezvous.  Husband was awarded a 2005 Ford F-150, a 2001 Ford Sport Trac, a 1978 Pontiac TransAm and a 1989 Ariva boat.

- Wife was awarded $5,000.00 in attorney fees.

- Personal property of less value was specifically divided, but the details of that division are not material to this appeal.

[¶6]   The district court explained its property division as follows:

The Court is aware the [Wife] may feel the disposition ordered by the Court is inequitable and therefore it is incumbent upon the Court to state in the decree the reasoning used to determine the above distribution.

a.     Technically the parties were married for approximately nine years but they lived together as husband and wife for only approximately four years.

b.     During their marriage they maintained separate checking and savings accounts and both parties filed separate tax returns.

c.     When the [Husband] elected to move to Cheyenne from Casper in 2008, the [Wife] elected to stay in Casper and never did move to Cheyenne to live with her husband.

d.     The marital relationship was diluted by distrust and neither party ever persuaded the Court that they were ever really invested in making the marriage into a traditional marital relationship.

e.     The Court took into account the source of the assets in arriving at an equitable distribution, hence the award to the [Husband] of the great majority of the equity in the home in Cheyenne and the Court's ruling on disposition of the remaining value of his inheritance from his parent.

f.     The Court also took into account the condition in which the parties will find themselves after the divorce is complete, hence the Court's award to the [Wife] of forty percent of the [Husband's] retirement.

g.     The Court accepts the [Wife's] testimony about her use of a portion of the funds generated by her student loans to pay marital expenses, hence the requirement that the [Husband] pay $20,000.00 of the student loans.

> h.  The Court was not persuaded [by] the remainder of the [Wife's] testimony [as] particularly credible.
>
> i.  Although the [Wife] may be in poor health and may have lost her job, she is well-educated and has the capacity to become employed and support herself.

[¶7]  Wife timely perfected her appeal from the divorce decree.

## DISCUSSION

### *Bias*

[¶8]  Appellant boldly accuses the district court of being biased towards her during the divorce trial.[4]  She asserts that it rushed the parties through the trial by requesting that counsel waive opening statements and closing arguments, and by taking a forty-five minute recess to attend to a personal matter.  Wife also contends that the district court showed bias because it told counsel and the parties that evidence of fault (supposed infidelity) would not make any difference in the division of marital property in this case and refused to allow her to present such evidence.  The record clearly belies her claims.

[¶9]  First and foremost, Wife did not object at trial to the matters that she now complains of on appeal.  In fact, her counsel stated on the record "so waived, Your Honor" with regard to opening statement, and did not object when the judge requested that the parties also forgo closing arguments.  She likewise did not object to the time taken by the judge for a personal commitment, which we find inconsequential since the trial went to 6:00 p.m.—an hour after the courts customarily close for the day.  Finally, she did not ask the court to continue the completion of the trial to another date to present additional evidence.

[¶10]  Failure to object constitutes waiver of whatever alleged error occurred, unless the error rises to the level of plain error.  *See* W.R.A.P. 9.05.  Wife has not shown any error

---

[4] An accusation that a judge is biased is a serious claim.  This Court has had the opportunity to explain:

> Prejudice involves a prejudgment or forming of an opinion without sufficient knowledge or examination. Bias is a leaning of the mind or an inclination toward one person over another. . . . The court has also said: Such conditions must exist which reflect prejudgment of the case by the judge or a leaning of his mind in favor of one party to the extent that his decision in the matter is based on grounds other than the evidence placed before him.

*TZ Land & Cattle Co. v. Condict*, 795 P.2d 1204, 1211 (Wyo. 1990) (citations and quotation marks omitted); *see also Brown v. Avery*, 850 P.2d 612, 616 (Wyo. 1993).

rising to that level, and therefore her arguments concerning these supposed errors are waived. *See, e.g., Case v. Outback Pipe Haulers*, 2007 WY 181, ¶ 14, 171 P.3d 514, 517 (Wyo. 2007).

[¶11] With regard to the claim that the district court was biased and refused to permit Wife to present evidence of Husband's infidelity, the record actually reveals that the district court did not limit Wife's ability to present evidence of fault in any way. The transcript plainly confirms that she presented all the evidence she wished to without having any constraints imposed by the judge. The only time the issue of fault evidence came up was after both parties had presented their cases, when the judge mentioned during his solicitous oral ruling from the bench that such evidence rarely factors into the division of marital property in any significant way.

[¶12] Moreover, Wife's attorney did not attempt to introduce evidence or make an offer of proof which would tell us what evidence of marital infidelity she would have presented. If Wife had evidence that she wanted to present, her attorney should have offered that evidence, and if she was not allowed to present it, an offer of proof should have been made so that we would know what would have been presented to determine whether an error was made. *Contreras v. Carbon Cnty. Sch. Dist. No. 1*, 843 P.2d 589, 595 (Wyo. 1992). Given the failure to take either of those steps, we consider the argument waived and can only conclude that the district court did not abuse its discretion.[5] *Id.*

[¶13] Even if the district court had limited Wife's presentation of fault evidence, we are convinced it would have acted well within its discretion to do so based upon the circumstances of this case. As our precedent plainly provides, a trial court may consider fault of the parties when dividing marital property, but may also refuse to do so, depending on the circumstances of the case. *See Grosskopf v. Grosskopf*, 677 P.2d 814, 820 (Wyo. 1984). Certainly a party's relationships may be important to child custody and visitation determinations. On the other hand, when there are no minor children, and at least where there are sufficient assets to provide for both parties, the court need not provide a forum for the parties to "air their dirty laundry." *Id*. (quoting *Paul v. Paul*, 616 P.2d 707, 715 (Wyo. 1980)).

*Division of Marital Property*

[¶14] Wife next argues that the district court abused its discretion in dividing the marital property because it "is so irrational it shocks the conscience." She says that "[f]or the most part, the division is equal except the equity in the Cheyenne home." Having carefully examined the record and controlling law, we find that our collective conscience

---

[5] Interestingly, Wife admits in her brief filed with this Court that "there is no evidence that [Husband] stayed in Cheyenne because of infidelity . . . ."

5

is not shocked, or even disconcerted, and we therefore conclude that the district court did not abuse its discretion.

[¶15]  This Court reviews the district court's division of marital property for an abuse of discretion. *Stevens v. Stevens*, 2014 WY 23, ¶ 7, 318 P.3d 802, 805 (Wyo. 2014).  "An abuse of discretion occurs when the property disposition shocks the conscience of this Court and appears to be so unfair and inequitable that reasonable people cannot abide by it." *Id.* (citation omitted).  We examine the record to determine if the district court's division of the property is in fact equitable from the perspective of the overall distribution of the marital assets and liabilities, rather than from a narrow view on a particular disposition of property. *Sweat v. Sweat*, 2003 WY 82, ¶ 6, 72 P.3d 276, 278 (Wyo. 2003).  We consider only the evidence of the successful party, and grant that party every favorable inference that can be gleaned from the record. *Id.*; *see also Stevens*, ¶ 7, 318 P.3d at 805.

[¶16]  The trial judge must divide the marital property in a manner that is just and equitable:

> [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

Wyo. Stat. Ann. § 20-2-114(a) (LexisNexis 2013).  We have explained that "[a] just and equitable distribution is as likely as not to be unequal." *Sweat*, ¶ 6, 72 P.3d at 278 (citing *Carlton v. Carlton*, 997 P.2d 1028, 1032 (Wyo. 2000)).

[¶17]  Wife focuses on a specific portion of the property division; that is, the district court's decision that she only gets $10,000.00 out of the roughly $227,000.00 equity in the Cheyenne home that Husband was awarded.  However, looking at the property division as a whole, *see* ¶ 5, we see that Wife was awarded the majority of the parties' retirement assets and seven of her own bank accounts with undisclosed balances.  A respectable portion of her education will be paid for by Husband, in addition to which she received half the equity in the Casper house, and $10,000.00 cash to buy out her equity in the Cheyenne house.  She was also awarded $5,000.00 in attorney fees and $11,234.00

6

from a joint bank account. While Husband was awarded the majority of the equity in the Cheyenne house and several other assets, he is now responsible for the substantial mortgage and HELOC on that property.

[¶18] Based upon our review of the trial transcript and record through the lens of the proper standard of review, we are convinced that the district court did not abuse its discretion. *See Stevens*, ¶ 7, 318 P.3d at 805-06; *Kummerfeld v. Kummerfeld*, 2013 WY 112, ¶ 7, 309 P.3d 822, 824 (Wyo. 2013); *Sweat*, ¶ 6, 72 P.3d at 278. In making its determination, the district court considered the fact that husband owned some of the property before the marriage, and that some of it was an inheritance he received. It was certainly proper to consider the source of the property divided. Considering only Husband's evidence, as our standard of review directs us to do, while granting Husband every favorable inference that can be drawn from the record, we conclude that the district court's overall property division was appropriate.

[¶19] Affirmed.[6]

---

[6] After briefing was complete, Wife's counsel moved to withdraw from this case. Her motion will be granted by a separate order when the requisite mandate is issued by this Court.